# 98 DTA 122

TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE BAYAMON
PANEL I

GIOVANNI COLBERG, ET ALS.
Demandantes-Recurridos

v.

JORALE ENTERPRISES, ET ALS.,
Demandados-Peticionarios

Núm. KLCE-97-01215

San Juan, Puerto Rico, a 18 de marzo de 1998

Panel integrado por su Presidente, Juez Sánchez Martínez,
y los Jueces Broco Oliveras y Urgell Cuebas

## TEXTO COMPLETO DE LA RESOLUCION

Existen dos razones fundamentales por las que debemos denegar la expedición del auto solicitado en este recurso. En primer lugar, el dictamen a revisar es una resolución dictada en corte abierta mediante la cual se denegó una moción de sentencia sumaria presentada por Jorale Enterprises Inc. y otros demandados. Dicha resolución no consta por escrito sino en una minuta. En segundo lugar, no es claro el derecho de los promoventes de la moción de sentencia sumaria de que se dicte sentencia a su favor. Veamos.

Se trata de una acción decenal de varios dueños de residencias de la urbanización Parque de los Frailes en Guaynabo contra la vendedora-contratista Jorale Enterprises, Inc. y varias personas más (incluyendo oficiales, arquitectos e ingenieros). La urbanización se construyó entre 1982 y 1983. Jorale obtuvo el permiso de uso el 7 de febrero de 1983 habiendo hecho constar en su solicitud que la urbanización fue terminada de construir el 27 de enero de 1983. Esta demanda se presentó el 3 de febrero de 1993.

Jorale presentó una moción de sentencia sumaria en la que plantea la caducidad de la acción decenal. Sostiene que el punto de partida para el cómputo del plazo es, a tenor con el Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124, el momento en que concluyó la construcción. [1] Ese momento, según afirmó bajo juramento en la solicitud del permiso de uso ante la Administración de Reglamentos y Permisos, fue el 27 de enero de 1983. Los demandantes se opusieron a base de declaraciones juradas y documentos en el sentido de que Jorale continuó los trabajos de construcción en Parque de los Frailes aun después de haber obtenido el permiso de uso de ARPE. De acuerdo con la minuta del día en que se discutió la moción, el tribunal *a quo* resolvió que la fecha en que jurídicamente concluyó la construcción fue el 7 de febrero de 1983, que fue la fecha en la que ARPE le expidió a Jorale el permiso de uso para la urbanización. Sin embargo, no ha emitido aún su resolución por escrito.

La Regla 36.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.4, dispone que *"[s]i en una moción presentada bajo las disposiciones de esta regla no se dictare sentencia sobre la totalidad del pleito ni se concediere todo el remedio solicitado y fuere necesario celebrar juicio, el tribunal determinará los hechos materiales sobre los cuales no hay controversia sustancial y los hechos materiales que están realmente y de buena fe controvertidos, mediante el examen de las alegaciones y de la evidencia presentada y oyendo argumentos de los abogados en vista oral, únicamente cuando el tribunal lo estime necesario. El tribunal, al emitir su resolución, dictará inmediatamente una orden especificando los hechos sobre los cuales no hay controversia sustancial, incluyendo hasta qué extremo la cuantía de los daños u otra reparación no está en controversia y ordenando los procedimientos ulteriores que sean justos en el pleito. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad"*. Nótese, pues, que la Regla 36.4 requiere un dictamen por escrito cuando se trata de la resolución de una moción de sentencia sumaria que es denegada total o parcialmente.

De otro lado, no podemos descartar el problema que representa para cualquier tribunal apelativo revisar dictámenes que no constan por escrito. La resolución es un acto judicial, donde un funcionario llamado juez, debidamente nombrado y desempeñando el cargo, emite una decisión que legitima con su firma. Después que el juez cumple con su obligación de evacuar la decisión por escrito y

8

autenticarla con su firma, es que la secretaria la registra, la notifica y archiva en los autos del caso copia de su notificación. Es entonces y sólo entonces, que la parte adversamente afectada por la resolución tiene derecho a utilizar los mecanismos de revisión judicial dispuestos por ley; no antes.

Recuérdese que las minutas o actas del tribunal son preparadas por una persona sin adiestramiento judicial, generalmente una secretaria auxiliar de servicios a sala cuya única función es la de hacer constar por escrito un resumen de los eventos que acaecen en las vistas orales. [2] El juez no es quien prepara la minuta. Aunque el juez eventualmente debe aprobarla, no se sabe cuándo lo hace pues tal aprobación no consta en la propia minuta. Tal aprobación solamente consta en una hoja de cierre aparte que retiene la Secretaria General del tribunal en el libro matriz de minutas, fuera del expediente de los casos. Regla 15(b) de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II-A, R.15(b). Además, no perdamos de vista una realidad de la vida: por no tratarse de un documento de su responsabilidad directa, con propósitos diferentes a los documentos judiciales en sí, el criterio que el juez utiliza para aprobar una minuta puede ser, naturalmente, muy distinto al que utiliza para revisar sus propias resoluciones y sentencias. Además, la minuta nunca deja de ser la interpretación que la secretaria de sala ha hecho de lo que el juez ha expresado en determinado momento (por buena que sea la secretaria).

Mientras no haya una resolución o sentencia escrita, el dictamen, al no tener finalidad, puede ser modificado por el juez en cualquier momento, *cf., Torres Cruz v. Municipio de San Juan*, 103 D.P.R. 217, 222 (1975), restándole de ese modo la certeza que deben tener las partes en el pleito respecto a cuál ha sido la decisión en su caso. Y esto, obviamente, presenta el otro problema, quizás el más grave, cual es, que el tribunal apelativo nunca sabrá exactamente cuál es el dictamen que debe revisar. Eso inyectaría un elemento de incertidumbre y hasta de azar en el proceso apelativo que a nadie conviene, ni a las partes, ni a los abogados y mucho menos al tribunal.

De otro lado, no está del todo claro, a juzgar por los documentos que forman parte del apéndice de este recurso, que el tribunal tuviese ante sí toda la verdad de los hechos pertinentes que justificaran que se dictara sentencia a favor de Jorale. Aunque Jorale presentó una declaración jurada y un documento auténtico sobre permiso de uso que indica que las obras en cuestión se terminaron de construir el 27 de enero de 1983, las partes opositoras presentaron documentos igualmente auténticos que tienden a demostrar que para esta fecha la construcción no había terminado en su totalidad. Apéndice, 74-84, 141-162. También presentaron contradeclaraciones juradas para impugnar el hecho alegado de que las obras fueron concluidas para el 27 de enero de 1983. Apéndice, 73, 164. Así vemos que existe controversia sustancial sobre un hecho bien fundamental: cuándo concluyó la obra.

Y precisamente por no tener ante nosotros la verdad de los hechos pertinentes para la disposición del recurso, no estamos en posición de declarar cuál es el derecho aplicable a este caso. Sólo sabemos que Jorale alega por declaración jurada y documento que terminó la obra el 27 de enero de 1983 y que los opositores aducen por la misma vía de declaraciones juradas y documentos, que fue mucho después. Sabemos a ciencia cierta que la Administración de Reglamentos y Permisos le expidió a Jorale un permiso de uso el 7 de febrero de 1983 y que la demanda en este caso se presentó el 3 de febrero de 1993. Si lo que expresa la minuta es correcto, el tribunal *a quo* se propone resolver que el punto de partida para el cómputo del plazo decenal es el 7 de febrero de 1983, fecha en que ARPE le expidió a Jorale un permiso de uso para la obra construida.

Reconocemos que estamos ante una cuestión novel y que la glosa de tratadistas y comentaristas no son de criterio unánime en cuanto a lo que significa en el Art. 1483 del Código Civil la frase *"desde que concluyó la obra"*. El campo está dividido entre los que opinan que esa frase se refiere al sentido material, físico, de conclusión de la obra, aunque ésta no se hubiere entregado al dueño, y los que afirman que debe prevalecer el sentido jurídico de la frase el cual presupone que la terminación de la obra solamente surtirá efecto con su entrega al dueño de la misma. Véase, e.g., Juan Cadarso Palau, *La Responsabilidad Decenal de Arquitectos y Constructores,* Ed. Montecorvo, Madrid, 1976, págs. 345-49.

Jorale pone mucho énfasis en el hecho de que ella era, a la vez, contratista y dueña y que, por eso, es imposible que pueda darse el supuesto de la entrega a personas que no contrataron la construcción de la obra. Por el momento bastará decir que no es necesario entrar a dilucidar esa controversia si se

probara que la fecha de la terminación de la obra fue posterior al 3 de febrero de 1983 -diez años antes de presentarse la demanda-. Si no se probara una fecha de terminación más tarde del 3 de febrero de 1983 entonces es que habría que evaluar si, a los fines del Art. 1483, el dueño de la obra es el contratista-vendedor o si, por el contrario, lo son los consumidores del proyecto de vivienda privada que adquirieron de aquél las unidades.

Con estos antecedentes, se deniega la expedición del auto solicitado.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 122**

**1.** Dicho artículo dispone:

*"El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez (10) años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.*

*Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince (15) años."*

**2.** Si bien es cierto que los tribunales apelativos hemos tolerado en la práctica reciente de la profesión que se solicite la expedición de autos de *certiorari* a base de las constancias de las minutas, en tales ocasiones se ha tratado de cuestiones puramente interlocutorias y mayormente en procesos penales donde la oralidad del procedimiento es timbre característico de la postulación forense y en donde el desarrollo expedito del caso está ligado a términos perentorios de juicio rápido.